# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 1, 2026

Lyle W. Cayce
Clerk

No. 25-30187

United States of America,

*Plaintiff—Appellee*,

*versus*

Kenric W. Young,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:21-CR-19-1

Before Elrod, *Chief Judge*, and Ho and Ramirez, *Circuit Judges*.
Per Curiam:[*]

Kenric W. Young conditionally pleaded guilty to federal drug and firearm offenses. He now argues the district court erred on two grounds. First, Young says the district court erroneously found law enforcement had reasonable suspicion to search him for weapons during a traffic stop. Second, he contends that the district court misclassified him as a career offender

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

during sentencing, arguing one of his prior state convictions is not a predicate offense under the Sentencing Guidelines.

Young concedes he did not preserve these objections below, so we review them for plain error. Finding no clear or obvious error, we affirm.

## I.

During a night-time patrol of a high-crime area, officers with the Shreveport Police Department initiated a traffic stop after observing a driver, later identified as Kenric W. Young, make a left turn without using a signal. One officer activated his vehicle's emergency lights and sirens, but Young did not stop. Despite sufficient space on the roadway to pull over safely, Young instead proceeded for roughly thirty-nine seconds until he parked in driveway of a residence. Young then immediately exited his vehicle without being directed to do so, raised his hands, and tossed his phone on top of his car.

After noticing a large bulge in the front pocket of Young's sweatshirt, officers performed a pat-down search to check for weapons. The bulge turned out to be two bags of marijuana and over $5,000 in cash. Officers discovered additional bags of marijuana near Young's car. And following the issuance of a warrant, a search of Young's residence further uncovered over a kilogram of methamphetamine, more than half a kilogram of marijuana, and a stolen firearm.

Young later conditionally pleaded guilty to possession with intent to distribute methamphetamine, *see* 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1). Because of Young's two Louisiana convictions for controlled substance offenses, the district court applied a career offender sentencing enhancement and sentenced him to 322 months of imprisonment.

No. 25-30187

## A.

Young first challenges the district court's denial of his motion to suppress evidence from the pat-down search. While he concedes that the initial traffic stop was valid, Young objects that the subsequent pat-down search of his person was invalid because officers did not have reasonable suspicion to believe that he was armed and dangerous.

His unpreserved suppression argument is reviewed only for plain error. *See United States v. Keller*, 123 F.4th 264, 267 (5th Cir. 2024). And where, as here, "a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005).

During a traffic stop, officers may "perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "Reasonable suspicion is a low threshold." *United States v. Castillo*, 804 F.3d 361, 367 (5th Cir. 2015). It "depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act." *District of Columbia v. R.W.*, 146 S. Ct. 1069, 1071 (2026) (citations omitted).

And for good reason—routine traffic stops can pose great danger to officers. What begins as a stop for a minor traffic infraction can easily take a deadly turn. *See, e.g.*, *Michigan v. Long*, 463 U.S. 1032, 1047 (1983) ("[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers."). So officers "need not be certain that an individual is armed; the issue is whether a reasonably prudent man could believe, based on specific and articulable facts, that his safety or that of

3

others is in danger." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc).

Here, there was sufficient evidence for a reasonable officer to believe that Young was armed and dangerous. After all, even "observations capable of innocent explanation may, in the aggregate, amount to reasonable suspicion." *United States v. Thomas*, 997 F.3d 603, 610 (5th Cir. 2021) (citing *United States v. Arvizu*, 534 U.S. 266, 277–78 (2002)).

The officers encountered Young in an unknown driveway of a high-crime area, after he initially failed to stop. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (holding "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis"). Considering that "weapons and violence abound" in high-crime areas, officers were justified in being "particularly cautious in approaching and questioning [Young]." *United States v. Rideau*, 969 F.2d 1572, 1575 (5th Cir. 1992).

Further, officers were reasonably alarmed when Young exited his vehicle without being directed to do so. These dangers were justifiably perceived as heightened by the presence of a passenger in Young's car. *See Maryland v. Wilson*, 519 U.S. 408, 413 (1997) ("[T]he fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer.").

Despite these factors, Young protests that his sweatshirt pocket bulge was insufficient to create reasonable suspicion. Unlike a bulge in a more "unusual" spot like a waistband, he says, "[p]ockets are meant to be used to carry items," so his sweatshirt bulge was too "common" of an occurrence to justify a search.

But the officers' basis for searching Young was reasonable, based on "commonsense judgments and inferences about human behavior."

*Wardlow*, 528 U.S. at 124. True, people often keep everyday items in their pockets. But pockets can also hold weapons. Considering the broader context of the stop, the officers reasonably believed Young was armed and dangerous. Because the officers had reasonable suspicion to conduct the pat-down search, Young has not demonstrated clear or obvious error.

## B.

Young also argues for the first time on appeal that the district court erred by classifying him as a career offender during sentencing. We again review for plain error.

The career offender sentencing enhancement applies where the defendant "has at least two prior felony convictions of . . . a controlled substance offense." U.S.S.G. § 4B1.1(a). To determine whether these conditions are met, we apply the categorical approach, comparing the elements of the state conviction to those of the generic crime under the Guidelines. *See Mathis v. United States*, 579 U.S. 500, 504 (2016). If the prior "crime of conviction criminalizes a 'greater swath of conduct' than the elements of the relevant Guidelines offense," it cannot be a predicate offense for the career offender classification. *See United States v. Minor*, 121 F.4th 1085, 1089 (5th Cir. 2024) (citations omitted). And because the Guidelines leave the term "controlled substance" undefined, we rely on the Controlled Substances Act's definition that was "in effect at the time of sentencing for the instant offense." *Id.*

Young concedes he has two state convictions for cocaine distribution offenses. *See* LA. REV. STAT. § 40:967(A)(1). But he contends that one of those convictions cannot serve as a predicate offense because Louisiana's definition of cocaine at the time of his conviction was broader than the Controlled Substances Act's definition. He argues that, unlike the relevant generic provision, Louisiana's definition of cocaine included Ioflupane, a

No. 25-30187

"radioactive cocaine derivative" used in medical diagnostics to test for neurological disorders like Parkinson's disease. *See Brown v. United States*, 602 U.S. 101, 108 (2024).

Even if he could establish the statute is overbroad, Young still fails to establish plain error. He "cannot simply rest on plausible interpretations of statutory text made in a vacuum. He must also show 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of the crime.'" *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc) (citation omitted). But Young cannot point to any case where Louisiana applied the statute in the manner he suggests. Thus, "any error is not clear or obvious because [Young] has not shown a realistic probability that Louisiana would prosecute someone for distributing Ioflupane or established that he is not required to make that showing." *United States v. Gladney*, 2026 WL 64281, at *1 (5th Cir. Jan. 8, 2026).[1]

Accordingly, the district court's judgment is affirmed.

---

[1] District courts have disagreed as to whether *Castillo-Rivera* survived the Supreme Court's holding in *United States v. Taylor*, 596 U.S. 845 (2022). *See, e.g., United States v. Williams*, 2026 WL 294953, at *3 (E.D. La. Feb. 4, 2026) (same). But Young does not argue here that *Taylor* abrogated *Castillo-Rivera*. Even if he had, the thoughtful disagreement among district courts demonstrates that any error would not be clear or obvious. *See also United States v. Kerstetter*, 2025 WL 1079071, at *4 (5th Cir. Apr. 10, 2025) (limiting *Taylor*'s holding to cases in which the court compares two federal statutes and rejecting its application in cases involving a state statute); *United States v. Augillard*, 2026 WL 1135452, at *4 (5th Cir. Apr. 27, 2026) ("[W]e conclude today that neither *Taylor* nor *Brown* abrogated *Castillo-Rivera*.").